I, Garrett H. Croon, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since April 2003. During this time, I have investigated federal violations concerned crimes of violence, including crimes occurring in Indian Country, and crimes associated with electronic devices. Throughout my law enforcement career, I have gained experience through everyday work related to these investigations. I have received training specific to the use of communication records and information, including location information, associated with those investigations as is requested in this continuation to identify and locate subjects involved in criminal activity. It is my experience that persons who have committed sexual assault have taken videos/pictures of their victims.

3.  As a Special Agent, I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and make arrests of offenses enumerated in 18 U.S.C. § 2516. I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.     Based on the facts set forth in this continuation, there is probable cause to believe that violations of 18 U.S.C. §2242, sexual abuse and 18 U.S.C. §2244, abusive sexual contact have been committed by Abraham Schafer, and there is also probable cause to search the cellular device (**the Device**) described in Attachment A, for evidence of this crime as further described in Attachment B.

5.     The facts in this continuation come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This continuation is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

6.     The property to be searched is a Google Pixel 7a black front cellular phone, IMEI 354977431326983, with a silver discover innovations case, hereinafter "**the Device**."  **The Device** is currently located at the Grand Traverse Band of Ottawa and Chippewa Indians Tribal Police Department, 2605 North West Bay Shore Drive, Suttons Bay, Michigan.

7.     The applied-for warrant would authorize the forensic examination of **the Device** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.     On Saturday, February 24, 2024, the Victim (V1) attended an employee appreciation party, arranged by her employer, at the Grand Traverse Resort and Spa, 100 Grand Traverse Village Boulevard, Acme, Michigan. While at the party, V1 visited with the subject

Abraham Schafer (Schafer). V1 and Schafer are co-workers at a car dealership in the Traverse City area.

9. After the party at the Grand Traverse Resort, V1 and her mother rented a room at the Turtle Creek Casino Hotel located at 7741 M-72, Williamsburg, Michigan. Schafer also rented a separate room at the Turtle Creek Casino Hotel. V1 and Schafer both consumed alcohol while at the party. Schafer is approximately 44 years old, V1 is 21 years old.

10. On Sunday, February 25, 2024, at approximately 2:45 a.m., Schafer invited V1 to his room for a shot of Fireball whiskey. After doing the shot of whiskey, V1 laid down on the bed in Schafer's hotel room. V1 woke up to Schafer kissing her on her forehead and moaning "oh baby, oh baby." V1 stated Schafer was digitally penetrating her vagina with four fingers, which caused pain to V1. This penetration was without V1's consent.

11. V1 then stood up and walked out of Schafer's hotel room and returned to her hotel room. Tribal Police have since reviewed the surveillance video from the Turtle Creek Casino and it shows V1 walking away from Schafer's hotel room in a distraught state and crying. On the surveillance video, it appears that V1 is looking at, or using, her cell phone as she walks away from Schafer's hotel room.

12. During a later interview with investigators, V1 showed officers texts messages that she received from Schafer after the assault. For example, on Sunday, February 25, 2024, at 3:56 a.m. (approximately two minutes after hotel surveillance video shows V1 leaving Schafer' hotel room) V1 received a text message from Schafer which read, "What's wrong?? Your shaking dude." Another text message exchange on the same day, V1 wrote to Schafer, "Dude I'm fine I don't feel

good." Schafer responded "Neither do I…fuckkk I see how it is then, This is CRAZY, Can't wait to hear what that rotten MF Abe did now…Lol, Thanks [Name redacted.] Take care, This right here is EXACTLY why I don't drink anymore and keep my circle really small. And here I thought you were inside that circle. I apologize for misinterpreting that… I sincerely care about you and wanna see you achieve your dreams and goals." "I'll leave you alone then. Smh."

13. On Wednesday, February 28, 2024, V1 went to Munson Medical Center, 1105 6th Street, Traverse City, Michigan, to seek a medical evaluation following the sexual assault. V1 advised the Sexual Assault Nurse Examiner (SANE) Nurse she was vaginally bleeding following the assault along with experiencing pain in her vaginal area. The SANE nurse completed a rape kit and turned over the kit to the Grand Traverse Band Tribal Police Department. This kit was sent to a crime laboratory for further analysis.

14. On Friday, March 1, 2024, FBI Agent Garrett Croon and Tribal Police Detective Troy Lamerson interviewed Schafer at his workplace. This interview was audio recorded. Schafer told Investigators that he and V1 went to his hotel room at the Turtle Creek Casino, did a shot of Fireball whiskey, and Schafer last remembered kneeling next to V1 while V1 was laying down on his bed in the hotel room. **The Device** was seized by Tribal Police Detective Lamerson and Special Agent Garrett Croon following their March 1, 2024, interview of Schafer. Schafer verified to investigators that **the Device** is, in fact, his cell phone.

15. On Monday, April 15, 2024, Investigators interviewed a co-worker of Schafer identified as Witness 1. Witness 1 attended the employee appreciation party and sent text messages to Schafer on **the Device** following the party on Sunday, February 25, 2024. Witness 1 provided investigators with copies of these texts, from Witnesses 1's cell phone. Schafer texted, "No sir,

didn't even play anymore. But I won THE BET w/ (Name Redacted). Lol And she owes me breakfast. Shit got pretty fuckin Wild last night tho. Lots to talk about tomm!!! Lmao Hope you had a good night too bro. I'm headed home to lay down." Witness 1 texted back, "Oh boy yeah I got fucking shit faced lol I'm feeling rough today." Schafer texted back, "Same. I'm laying down. Def feeling the repercussions today. Lol." Witness 1 texted back, "How late did you stay at the resort?" Schafer texted back, "We went to Jack's Taproom inside resort at 1030 and shut that MF right down. Sean was sooo fucked up. Knocking shit over etc. Lol He was trying to get with (Name Redacted) momma!!! Smh." Witness 1 texted back, "that's awesome lol." Schafer texted back, "Lots more to come tomm. Don't you worry. Lol." On Wednesday, February 28, 2024, Schafer texted Witness 1, "I was thinking last night. Please Don't bring up switching partners to (Name Redacted) unless she says something 1st….otherwise she's gonna know there was some conversation about what happened. And she can help me get my bonus this week too. Lol. Thanks bro. If she even comes in today…who knows."

16. On Monday, October 28, 2024, during preparation for the trial set in this case, V1 told investigators and the Federal Prosecutors that V1 texted with Schafer (**the Device**) before the assault. V1 explained that she and Schafer were both in a work-related group text message (chat) wherein they exchanged messages about work-related topics. V1 stated that Schafer also texted V1 on her number outside the group chat. V1 estimated that she and Schafer had texts dating back to approximately December 2023 or January 2024, when she began working at the car dealership. These texts included group messages from the work-related group chat as well as private messages between V1 and Schafer. V1 and V1's mother also told investigators that Schafer would buy V1 gifts like clothing and hats, which he would send to V1's house or give to V1 at work. V1 and her mother told investigators that Schafer would also ask to come visit V1's sister's high school sports

games. V1 and her mother both told investigators that Schafer's behavior toward V1 was odd, especially given Schafer's age. I am aware that Schafer is about twice the age of V1.

17.     On March 8, 2024, I swore out a federal search warrant with U.S. Magistrate Judge Sally J. Berens seeking authorization to search **the Device** for images (videos and photographs), electronic communications, and call logs for the limited time period between 3:00am February 25, 2024, and 10:00am February 25, 2024. (*See* 24-mj-98). I now, through this warrant, seek authorization to expand the scope of my search based on the new information from V1 about her electronic communications with Schafer, Schafer's apparent one-sided and long-standing interest in V1, the interview with Witness 1, as well as the communications from Schafer to V1 about the assault found on **the Device** during the initial limited search.

18.     Based on the investigation thus far, there is probable cause to believe that evidence of Schafer's sexual abuse and abusive sexual contact of V1 will be found on **the Device**. Specifically, there is probable cause to believe that evidence of Schafer's purchases of gifts for V1, including internet searches, sales receipts, and mail tracking or verification information could be found on Schafer's phone. There is probable cause to believe that additional electric communications between V1 and Schafer will be found on **the Device**. Finally, there is probable cause to believe that Schafer communicated with others, including Witness 1, about the assault using **the Device** and evidence of these conversation will be found on the phone.

19.     **The Device** is currently in storage at the Grand Traverse Band of Ottawa and Chippewa Indians Tribal Police Department evidence room. In my training and experience, I know that **the Device** has been stored in a manner in which its contents are, to the extent material

to this investigation, in substantially the same state as they were when **the Device** first came into the possession of the Grand Traverse Band of Ottawa and Chippewa Indians.

20. I am aware that the Turtle Creek Casino Hotel is located on land held in trust for the use and benefit of the Grand Traverse Band of Ottawa and Chippewa Indians, that is Indian Country. I am also aware that the victim is an enrolled member of the Grand Traverse Band of Ottawa and Chippewa Indians, that is an Indian as defined by federal law. Schafer is non-Indian. I am advised that there is federal jurisdiction over this sexual abuse investigation pursuant to 18 U.S.C. § 1153.

## TECHNICAL TERMS

21. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still

      photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22.    Based on my training, experience, and research, [and from consulting the manufacturer's advertisements and product technical specifications available online at http://store.google.com], I know that **the Device** has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

24. There is probable cause to believe that things that were once stored on **the Device** may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is

> typically required for that task. However, it is technically possible to delete this information.
>
> d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

25.   *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **the Device** because:

> a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.     *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

28.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of **the Device** described in Attachment A to seek the items described in Attachment B.